HELIKER *v.* OAKLAND COUNTY.

HIGHWAYS—IMPROVEMENT — COVERT ACT—REMEDY BY CERTIORARI EXCLUSIVE.

Where no constitutional right of plaintiff taxpayers was invaded by county highway commissioners in proceedings for the improvement of a certain highway under the provisions of the Covert act, and plaintiffs failed to avail themselves of the right to review said proceedings by certiorari as provided in 1 Comp. Laws 1915, § 4736, they are precluded from raising the question of the jurisdiction of the commissioners because of the fact that at the time the petition was filed part of the road proposed to be improved was not a public highway, in an action to recover taxes for said improvement paid under protest.

Error to Oakland; Williams (William B.), J., presiding. Submitted October 12, 1921. (Docket No. 121.) Decided December 21, 1921.

Assumpsit by Charles E. Heliker against the county of Oakland for taxes paid under protest. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Charles C. Stewart* and *William C. Gottman,* for appellant.

*James H. Lynch,* for appellee.

BIRD, J.   In the summer of 1917 the highway commissioners of Oakland county were petitioned, under the provisions of the Covert act, to improve a certain highway extending in a northerly direction from the Grand River road through the township of Farmington, a distance of nearly 5 miles. In response to the petition the commissioners laid out the road, created

a special assessment district, sold the bonds and let the contract. The road was subsequently constructed and the contractor paid. Plaintiff and certain other land owners living in the special assessment district paid their taxes under protest and assigned their right of action to plaintiff, who sues to recover the sum paid from the township. The matter was heard by the trial court and a jury, and a verdict was directed for the defendant on the ground that plaintiff should have invoked the remedy of certiorari as prescribed in the highway act.

The point principally relied upon and discussed by plaintiff in this court is the fact that the 5-mile line which was petitioned to be improved was not all of it a public highway when the petition was filed. Three miles of it was not a public highway. Two miles of it was. This appears to be conceded by defendant. It appears that after the filing of the petition with the commissioners the owners of the land over which the 3-mile strip extended conveyed the land to the county for a public highway. Defendant conceded that that portion of the proposed line for improvement was not a public highway at the time the petition was placed in the hands of the commissioners, but insisted that plaintiff could not now raise that question in an action at law or equity, because he had failed to raise it by writ of certiorari, the remedy provided by the highway act. This remedy provided that within 10 days after filing the apportionment of benefits with the county clerk the proceedings may be reviewed by certiorari. The section then provides:

"If no certiorari be brought within the time herein described, the improvement shall be deemed to have been legally ordered and established, and its legality shall not thereafter be questioned in any suit at law, or in equity. When such proceedings are brought, the county road commissioners shall postpone the letting of contracts, if they have not been let, and of all

other proceedings until after the determination of the court." 1 Comp. Laws 1915, § 4736.

Counsel argue, in substance, that inasmuch as the county commissioners were without jurisdiction to act on the petition the proceedings improving the highway were void, and that the question could be raised collaterally in other actions. There is no claim of fraud involved in plaintiff's contentions.

The foregoing highway provision is very similar to the provision in the drain law. 1 Comp. Laws 1915, § 4908. It was inserted in both acts for the purpose of furnishing a speedy test of the validity of drain and highway proceedings under way. There have been many cases adjudicated in this court where this provision has been passed on but among them few cases have involved the question of jurisdiction. The question is one which has perplexed the profession to determine when the exclusive remedy of certiorari must be invoked and when the proceedings might be attacked collaterally in other actions. The case of Strack v. Miller, 134 Mich. 311, involved a question of jurisdiction. The question there presented was much like the one we are considering. The bill was filed to enjoin the drain commissioner from laying out and constructing a drain on complainant's land, on the ground that the petition gave him no jurisdiction to act. The defect in the petition was that it lacked the signatures of the requisite number of freeholders. The drain commissioner answered that the petition was one to deepen and widen an existing drain and, therefore, was sufficient. The chancellor found there was no existing drain on the land described, and as there was not sufficient signatures to the petition for the construction of a drain, the proceedings were of no force. The relief prayed for by complainant was granted. This court reversed this conclusion on the ground that certiorari was the remedy which com-

plainant should have taken, and as complainant had not invoked it he could not maintain his bill in equity. The decree was reversed and the bill dismissed. In the opinion it was said by Mr. Justice MOORE that:

"Section 4345 provides for an appeal, and section 4346 provides for a review of the proceedings upon certiorari. The purpose of the statute undoubtedly is to give an opportunity to have a speedy hearing upon any question of jurisdiction or any question of irregularity. If the complainant had sworn to the probate court that the application was fatally defective, the proceeding could have then been ended. The same result could have been reached before a board of review. This could have been accomplished without so much delay and expense as is involved in a chancery proceeding."

This holding was afterwards referred to and approved in *Auditor General* v. *Bolt,* 147 Mich. 283. Later, in *Township of Clarence* v. *Dickinson,* 151 Mich. 270, a rule was laid down by which the profession could determine with some degree of certainty whether, under a given state of facts, the exclusive remedy of certiorari should be invoked, or raised collaterally in other actions. The case involved the question of jurisdiction of the commissioner on the ground that the petition was not signed by enough freeholders. The question was whether the commissioner had jurisdiction to act on the petition. This court refused to consider the merits. It called attention to the fact that the failure to have a sufficient number of signers was but a violation of a legislative rule fixing the number of signers and that the legislature had the right to fix the remedy for infraction of a legislative rule. It was then said if complainant was complaining because his constitutional rights had been invaded, a collateral attack could be made upon the drain proceeding and he would not be forced to accept the remedy by certiorari. This distinction is so impor-

tant in these cases that it may be well to quote in part what is there so well stated:

"Complainants are seeking to do what this law in express terms prohibits. They cannot succeed if the law is constitutional. Complainant's claim of a right to disregard the law is an assertion of its unconstitutionality. Is the law unconstitutional? I have no doubt cases may arise to which this law can have no constitutional application. Such a case will be presented if the proceedings before the drain commissioner violate constitutional rights. The fact that such cases may arise is no reason for declaring the law unconstitutional. It is to be presumed that the legislature intended to enact a constitutional law and not an unconstitutional law (Cooley on Constitutional Limitations [7th Ed.], p. 255), and it should be construed in accordance with this intent. The language of the statute indicates that the legislature intended to go to the limit of its authority, but it is also to be presumed that it did not intend to exceed those limits. Within the limits of that authority, then, the statute has a constitutional application. *Auditor General* v. *Bolt,* 147 Mich. 283; *Crandall* v. *McElheny,* 146 Mich. 191; *Grandchamp* v. *McCormick,* 150 Mich. 232.

"The question, then, and the only question, for our consideration is this: Can the statute have constitutional application to this case? The only reason advanced for saying that it cannot, is this, viz., that equity can afford relief whenever the drain commissioner lacks jurisdiction. It is apparent from the foregoing reasoning that the lack of jurisdiction which will warrant relief in equity must arise from a violation of the Constitution. The objection to the jurisdiction in such cases must be a valid constitutional objection. Such objection could be urged if no notice or opportunity of hearing was given to one whose property was to be taken for the construction of the drain, for he has a constitutional right to such notice, and if that right is disregarded, the proceedings are as to him a nullity. If, on the other hand, the objections to the jurisdiction are not of a constitutional character, it is obvious that the legislature has a right to say how they shall be raised, or, in its wisdom, deprive one altogether of the privilege of raising them.

"The jurisdictional objection raised by complainant is not of a constitutional character. The Constitution does not require the petition to be signed by five property owners liable to assessments for benefits. That requirement is purely statutory. The legislature might have dispensed with it altogether. It therefore possessed ample constitutional authority to declare how objections to its non-observance should be made. It had authority to declare that objections not so raised should be disregarded. It exercised that authority by the statute under consideration. That statute is therefore constitutional in its application to this case and it prevents complainants maintaining this suit."

Applying this rule to the present proceeding, it is quite evident that no constitutional right of plaintiff's had been invaded when the commissioners filed with the county clerk their apportionment of benefits, nor had they been invaded 10 days thereafter. The commissioners had at that time neglected to observe a legislative provision in the Covert law. This made it mandatory on plaintiff if he desired to contest the action of the commissioners to resort to the remedy of certiorari applicable in highway proceedings. Had plaintiff owned land through which the proposed improvement was to be made, and had not given his assent thereto, then his constitutional rights would have been affected, and he could have raised the question collaterally in other actions. But this was a legislative rule which was transgressed. The legislature might have provided that the commissioners could have done just what they did do, and hence it follows that for an infraction of this legislative rule the remedy by certiorari was exclusive.

Having reached this view, the action of the trial court in directing a verdict for defendant must be affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.